**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RUSSELL LASYONE,** | § | |
| **(TDCJ No. 02211716),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-347-O** |
| | § | |
| **MANAGEMENT and TRAINING** | § | |
| **CORPORATION, et al.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM  OPINION and ORDER OF DISMISSAL
UNDER 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)**

This case is before the Court for review of pro-se inmate Russell Lasyone ("Lasyone")'s case under the screening provisions of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B). Having reviewed the operative pleadings, the Court finds that all Plaintiff's claims must be **DISMISSED** with prejudice under authority of these provisions.

**I.      BACKGROUND**

Plaintiff Lasyone  filed a completed form civil rights complaint with attachments and exhibits.    pages. Compl. 1-18, ECF No. 1. After initial review of that complaint, the Court directed Lasyone to answer the Court's questions about his complaint in the form of a more definite statement. Order, ECF No. 7. Lasyone complied by filing a more definite statement ("MDS"). MDS 1-6, ECF No. 8. The Court will consider the complaint as supported by the MDS.

Lasyone  remains housed at the Texas Department of Criminal Justice (TDCJ) Lindsey State Jail facility in Jacksboro, Texas. Compl. 1, ECF No. 1. Lasyone names as defendant the

1

private entity that manages that facility Management and Training Corporation ("MTC"). *Id.* He also names as defendants Warden Brian Collins, and Officer Smith. *Id.* He first claims that MTC Lindsey Unit "is the operating department where violations occurred." *Id.* a 3. Lasyone writes that "Defendant Brian Collins is the superintendent/Warden of MTC Lindsey Unit. He is legally responsible for the operation of Lindsey State Jail and for the welfare of all the inmates in that prison." *Id.* at 3. Lasyone claims that "Officer Smith violated by 8th Amendment right, forbidding cruel and unusual punishment by locking me in a janitor's closet." *Id.*

In a statement of claim section in the complaint, Lasyone provided:

> 3/31/23, around or about lunch time I was returning to F1D, I had been at my parole interview. When I walked into the deep space I asked Correctional Officer Smith about my lunch tray. He then advised me that my tray was in the Janitor's closet, which is where they normally keep the tray for the inmate that is not present at "chow time." I then walked into the Janitor's closet and wasn't exactly sure which lunch tray was mine, some of the trays were empty.

> As I went to grab a complete tray I heard Officer Smith say "you are taking too long," and closed the door, locking me in the closet. I don't bother anybody and I have maintained exceptional behavior here but what he did to me that day was wrong! I was locked in that closet with the lights off until the gang inspector Miss Crigler A.K.A. "Miss T" unlocked the closet and let me out. This situation was very traumatic and has left me with a sense of unease. The officers here are not trained properly to house or assist psychiatric patients such as myself and what happened that day really upset me. Part of my overall psychiatric evaluations come from earlier events in my life that were close to what happened to me that day. Something needs to be done.

> The MTC Corporation is responsible, Warden Collins is responsible, and Officer Smith is responsible.

Compl. 5, ECF No. 1.

In response to the Court's questions in the Order for More Definite Statement, Lasyone writes that most of the inmates at the Lindsey facility "are on a psychiatric caseload." MDS 1, ECF No. 1. As to whether defendant Collins or Smith knew that he particularly had a psychiatric

history before the complained of event took place, Lasyone claimed that "Warden Collins was at all times aware of my psychiatric diagnosis," but that Officer Smith "was not directly knowledgeable of my mental status . . .." *Id*. at 2, ECF No. 8.

Lasyone answered the Court's question about the length of time he was locked in a closet by writing "the Officer . . . locked me in the closet for 45 minutes." *Id*. He also claims that he immediately asked Officer Smith to open the closet but he "was too busy laughing with the other inmates about this." *Id.* The Court asked for facts related to Warden Collins's involvement, Lasyone wrote only: "Warden Brian Collins is responsible for the trainings [sic] of his employees." *Id.* at 3.

> With regard to his naming of MTC as a defendant, Lasyone wrote:
>
> MTC is the higher corporation and they are completely responsible for the actions of they're understudy (employees). When you work for an employer, your action are no longer just represent you. You represent you and your company. One would believe the Management and Training Corporation trains they're employee to perform their duties accordingly.

*Id.* at 3. In response to the Court's more particular question about any facts of any custom, policy, or practice of MTC related to the events in the complaint, Lasyone wrote: I have the right to recovery in the section of damages. At the end of all possible speculations for this matter . . . there is no understanding plausible or anything reasonable for locking a mental health/psychiatric inmate such as myself in a janitor's closet. *Id.* at 4.

In response to the Court's query regarding whether Lasyone claimed negligence or deliberate indifference to his health or safety, Lasyone wrote: "I believe the facts that I have provided do constitute negligence and does show deliberate indifference to my 8th Amendment,

which prohibits cruel and unusual punishment." *Id.* He also noted that "Miss Crigler just happened to be passing by and heard me kicking on the door trying to get out." *Id.*

The Court also asked Lasyong if he had sustained any physical injury that required medical attention, and Lasyone provided this response:

> I have been at an unease around this officer since that day. I have been mentally injured. I honestly felt like I was never going to get out of there. Restrictive confinement causes me breathing issues and panic attacks all the time. I have been documenting everything with my mental health case worker since that day.
>
> [M]y sense of ease as been real shaky around defendant Smith. My psychiatric events and meetings have increased, I actually feel like these appointments are necessary.

*Id.* at 5.

In the MDS, Lasyone adds a claim for punitive damages. In this regard, he writes: "Now seeking punitive damages. Not all punitive damage award require physical assault, The point of punitive damages is to punish members of the prison staff who violate your rights and to set an example to stop other prison staff from acting illegally in the future." *Id.* at 4.   He also contends "to get punitive damages, the officials had to either jurt you on purpose, or do something so obviously dangerous, they had to have known it was likely to cause deliberate indifference or callous intent to your rights." *Id.* at 6. Finally, Lasyone claims: "No matter how you twist and turn, or even manipulate this situation . . . locking me inside a 8' by 10' janitors closet for 45 minutes unattended is completely unacceptable as well as cruel and unusual punishment." *Id.*

For relief in this action, Lasyone writes that he seeks "35,000.00 against each individual listed, the MTC Corporation, Warden Collins, and Correction Officer Smith (the one that locked me in the closet)."  Compl. 4, ECF No. 1.

## II.       LEGAL STANDARD OF REVIEW UNDER §§ 1915A and 1915(e)(2)(B)

Plaintiff Lasyone was an inmate when he filed this action. As a part of the Prison

Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires a district

court to review and screen a complaint from a prisoner seeking relief from a governmental entity,

officer, or employee as soon as possible after docketing. *See* 28 U.S.C. § 1915A(a). As Plaintiff

seek relief from government officials this provision applies to this case.

Because Lasyone is proceeding in-forma-pauperis, his pleadings are also subject to

screening under 28 U.S.C. § 1915(e)(2). Both § 1915(e)(2) and § 1915A provide for *sua sponte*

dismissal of the complaint or any portion thereof, if it is frivolous, malicious, fails to state claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is

"based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in

fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state

a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim,

plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action" do not suffice to state a claim upon which relief may be granted.

*Id.*

## III.   ANALYSIS

### A.   Warden Brian Collins - No Personal Involvement - No Respondeat Superior

When Lasyone filed this action on a prisoner complaint form, he invoked the Court's federal question jurisdiction by seeking relief against the defendants under 42 U.S.C. § 1983.[1] Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well of constitutional norms." *Id.* A claim of liability for violation of rights under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant"); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) ("In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged"); *Douthit v. Jones*, 641 F.2d 345 (5th Cir.1981) (a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation.")

Warden Collins is listed as a defendant. Compl. 1, ECF No. 1. A supervisory official, like Warden Collins, cannot be held liable pursuant to § 1983 under any theory of vicarious liability

---

[1] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir.1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979). Such officials may be liable when enforcement of a policy or practice results in a deprivation of a federally protected right. *Alton*, 168 F.3d at 200 (citing *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998)).

When asked to provide more facts about Collins, Lasyone wrote "Warden Brian Collins is responsible for the training of his employees." MDS 3, ECF No. 8.  In the next sentence, he then writes that the action of Officer Smith were "irresponsible and unexcusable [sic]." But he otherwise does not state any facts of what training was not provided that could relate Collins to Smith's actions. Without more specific facts of actual involvement in any interaction with him or with Officer Collins, Lasyone has essentially claimed that Collins is vicariously liable for the actions of Officer Smith. Furthermore, although Plaintiff alleges Collins was aware of his "psychiatric diagnosis," he does not allege Collins was aware of his placement in the closet.  As Lasyone has not provided sufficient facts to support a claim against Warden Collins, his claims against Collins must be dismissed.

### B.    MTC - No Custom or Policy

Plaintiff sues MTC, the private corporation that operates Lindsey Unit. Compl.1, ECF No. 1. Private prison management companies may be sued under § 1983 for alleged constitutional violations. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). However, MTC cannot be held liable under § 1983 on a respondeat superior or vicarious liability theory. *Olivas v. Corrections Corp. Of Am.*, 408 F.Supp.2d 251, 255 (N.D.Tex. 2006); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, Plaintiff must allege that MTC has an official custom or policy that resulted in a violation of his constitutional rights. *Olivas*, 408 F.Supp.2d at 255. Lasyone has not done this.

As noted above, Lasyone wrote in the more definite statement that

MTC is the higher corporation and they are completely responsible for the actions of they're understudy (employees). When you work for an employer, your action are no longer just represent you. You represent you and your company. One would believe the Management and Training Corporation trains they're employee to perform their duties accordingly.

MDS 3, ECF No. 8. In response to the Court's more particular question about particular facts of any custom, policy, or practice of MTC related to the events in the complaint, Lasyone wrote only: "I have the right to recovery in the section of damages. At the end of all possible speculations for this matter . . . there is no understanding plausible or anything reasonable for locking a mental health/psychiatric inmate such as myself in a janitor's closet." *Id.* at 3-4.

Lasyone has wholly failed to provide facts to support a claim against MTC. Even when prodded by the Court's question about any custom or policy, he did not state any facts against MTC. Lasyone's claims against MTC must also be dismissed.

### C.    Officer Smith- *De Minimis* Injury and No Physical Injury

1.    <u>*De Minimis* Injury</u>

The case and controversy requirement of Article III of the Constitution requires that to proceed in federal court a civil rights complaint must allege an injury, *see O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974), that is more than trivial or *de minimis*. *See Siglar v. Hightower*, 112 F. 3d 191, 193-94 (5th Cir. 1997). "Minor deprivations suffered for short periods of time will not rise to the level of an Eighth Amendment violation . . . .." *Jacobs v. Quinones,* No. 1:10-cv-02349, 2013  WL 144234, at *7 (E.D. Cal. Jan. 11, 2003), *rep. and rec. adopted*, 2013 WL 1750017 (April 23, 2013). Here, as to the claim that Lasyone was placed in the Jantior's closet for only 45 minutes,  even assuming this to be true, such action does not allege a more than *de minimis* claim of  injury. Thus, Lasyone has failed to state a more than *de minimis* injury claim in

order to state a claim of a violation of the Eighth Amendment.

2.    42 U.S.C. § 1997e(e) Limitation on Monetary Damages if no Physical Injury

As a part of the PLRA, Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e).  This physical injury requirement has long been recognized as applying to claims under the Eighth Amendment. *See Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999);  *Siglar*, 112 F.3d at 193-94. The United States Court of Appeals for the Fifth Circuit subsequently held that § 1997e(e) applied to claims under the First Amendment as well, noting "it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*,  404 F. 3d 371, 375 (5th Cir. 2005). More recently, the Fifth Circuit rejected an inmate's claim that § 1997e(e) does not apply to a Fourth Amendment claim arising from a strip search, emphasizing that in *Geiger* the court noted that "1997e(e) applies to *all federal civil actions,"* and noting that "[r]egardless of [Plaintiff's] invocation of the Fourth Amendment, his failure to allege any physical injury preclude his recovery of any compensatory damages for emotional or mental injuries suffered." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original).

Courts in this circuit have recognized that § 1997e(e) bars a Plaintiff from seeking

9

monetary damages to compensate for emotional or mental injury, absent a showing of physical injury in different contexts. *See generally Logan v. Honeycutt,* No. 12-156-JJB-SCR, 2012 WL 3903501, at *3 (M.D. La. July 24, 2012) (holding that Plaintiff's failure to allege that he sustained a physical injury as a result of alleged retaliation prohibits him from recovering compensatory damages pursuant to 42 U.S.C. § 1997e(e), *rep. and rec. adopted*, 2012 WL 3903452 (Sep. 7, 2012); *Hodge v. Stadler*, No. 04-0965, 2006 WL 1560754, at *3 (E.D. La. May 24, 2006) ("Arguably, it may seem counterintuitive that a prisoner's damage claim for a purely nonphysical form of retaliation would be barred unless he can show a physical injury suffered in connection with the claim. Nevertheless, this Court finds that is in fact the result mandated by the decision of the United States Fifth Circuit Court of Appeals in *Geiger v. Jowers*, 404 F.3d 371 (2005)").

Lasyone has not alleged any physical injury. Compl. 1-5, ECF No. 1. When asked to list any physical injury that may have resulted in medical care, Lasyone responded

> I have been at an unease around this officer since that day. I have been mentally injured. I honestly felt like I was never going to get out of there. Restrictive confinement causes me breathing issues and panic attacks all the time. I have been documenting everything with my mental health case worker since that day.
>
> [M]y sense of ease as been real shaky around defendant Smith. My psychiatric events and meetings have increased, I actually feel like these appointments are necessary.

MDS at 5. Lasyone's failure to allege physical injury bars claims for recovery of any compensatory monetary damages. Thus, Lasyone's claims for compensatory monetary damages are barred under 42 U.S.C. § 1997e(e) and must be dismissed.

### F.    No Basis for Punitive Damages

The physical injury provision § 1997e(e) does not preclude claims for nominal or

punitive damages. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). Lasyone recites a claim for "punitive" damages. MDS 6, ECF No. 8.  Because the Court has otherwise found that Lasyone has failed to state plausible claims against any defendant in this suit, his claims for punitive monetary damages must also be dismissed for failing to state a claim upon which relief may be granted. *See Oby v. Sander*, 778  F. App'x 326, 327 (5th Cir. 2019) (noting that even if district court's conclusion that defendant officer used excessive force  "equates to a threshold finding of evil intent or callous indifference . . . the court did not abuse its discretion by ultimately concluding that punitive damages were unwarranted in this case.");  *see generally Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) ("Punitive damages may be awarded in § 1983 cases 'when the defendant's conduct is shown to be motivated by evil malice or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Lasyone has not set forth any facts to support a claim for punitive damages, and such claim must be dismissed.

## IV.     CONCLUSION and ORDER

It is therefore **ORDERED** that all of Plaintiff's claims are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**SO ORDERED** this **29th day** of **January, 2024.**

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**

11